VELPO ANTHONY *et al.*, Petitioners-Appellees, v. SHENEATHER Y. BUTLER *et al.*, Respondents-Appellants.

First District (4th Division) No. 88—0412

Opinion filed February 19, 1988.

Randolph C. Greune, of Evergreen Park, for appellants.

Sheldon Gardner, of Fos, Schuman, Drake & Barnard, of Chicago, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Sheneather Butler (Butler) filed nominating papers for the office of Democratic ward committeeman in the city of Chicago for the March 15, 1988, primary election. A week later, Butler filed a second set of nominating papers for the same office for the same primary election. Velpo Anthony and others (hereinafter collectively Anthony) filed an objection to Butler's nominating papers. Following a hearing before a hearing officer of the Chicago Board of Election Commissioners, *ex officio* Chicago Electoral Board (Board), the officer determined that Butler's nominating papers were sufficient to place her name upon the ballot for the primary election. Thereafter the Board issued

a decision which also reached this conclusion.

Anthony filed an action for administrative review of the Board's decision in the circuit court of Cook County. Upon such review, the trial court entered an order that reversed the Board's decision and remanded the matter with directions. Butler appeals.

Butler's appeal presents three questions: (1) does section 7—10 of the Election Code (Ill. Rev. Stat. 1985, ch. 46, par. 7—10) permit a candidate to file more than one set of nominating papers for the office sought; (2) does section 7—10 permit a candidate to file photocopies, rather than originals, of petition sheets in the candidate's nominating papers; and (3) does the Election Code permit a trial court's invalidation of all petition signatures in excess of the maximum number allowed under the Code, when the Board has adopted no rule or regulation, to govern the validity of excess signatures included in a candidate's nominating papers, in accordance with the directives of *Richards v. Lavelle* (7th Cir. 1980), 620 F.2d 144.

We reverse trial court's order in part, affirm in part, and remand the matter to the Board for further proceedings.

BACKGROUND

On December 7, 1987, Butler filed nominating papers for the office of Democratic ward committeeman of the 27th ward in the city of Chicago for the March 15, 1988, primary election. The papers included approximately 7,000 signatures on individual petition sheets. A week later, Butler filed a second set of nominating papers for the same office in the election. These papers included approximately 2,000 signatures.

In late December, Anthony filed an objection to Butler's nominating papers, contending that the papers were invalid because two sets of nominating papers had been filed and because the papers included more than the maximum number of signatures permitted in the Election Code. Anthony also contended in his objection that certain signatures were invalid and should not be counted because, *inter alia*, the signatures appeared on "sheets on which the purported names are photocopied." Anthony requested a hearing on his objections, a declaration that Butler's nominating papers were insufficient, and an order that Butler's name be stricken and not printed upon the official ballot for the March 15, 1988, primary election.

The Chicago Board of Election Commissioners, *ex officio* Chicago Electoral Board, assigned the matter to a hearing officer. Butler filed a motion to strike Anthony's objection, to which Anthony filed a response. After argument, the hearing officer overruled Butler's motion

to strike the objection, determined that Butler's two petitions constituted a single filing, and ordered a binder check to review the signatures against objections. The hearing officer further determined that photocopies of petition sheets, not otherwise duplicated or appearing in the nominating papers, should be included in the binder check. Thereafter it was determined, and the hearing officer so found, that Butler's nominating papers contained the requisite minimum number of valid signatures, because there were sufficient signatures appearing therein to which Anthony had not otherwise objected.

The Board then issued its decision on Anthony's objections, overruled the objections, and found Butler's nominating petitions sufficient. Specifically, the Board found, *inter alia*, that: (1) Butler could properly file two complete sets of nominating papers for the same office, since the Code does not prohibit such dual filing; (2) Butler could properly submit papers which contained photocopies of signatures on the petition sheets, because the Code does not prohibit such a procedure; and (3) Butler could properly submit papers containing more than the maximum number of signatures required under the Code, since the "Board, in the absence of rules governing this issue, [cannot] per se invalidate signatures filed in excess of the maximum. The Board's practice *** has been to count all signatures, even those in excess of the maximum."

Anthony then filed an action for administrative review of the Board's decision in the circuit court of Cook County. Upon such review, the trial court found that: (1) Butler could properly file only one set of nominating papers under the Code, and as a result the second set of nominating papers filed by Butler was "null and void and should be treated as a surplusage and not as part of the nominating petition"; (2) Butler could not properly submit papers which contained photocopies of signatures, and such photocopies of signatures "should not be counted as valid signatures"; and (3) inasmuch as Butler's paper contained more than the maximum number of signatures permitted under the Code, "only the first 2,445 signatures should be counted for purposes of determining the validity of the nominating petition[;] *** in calculating the maximum number of signatures, those signatures on the photocopies shall be included." The trial court reversed the Board's decision and remanded the matter for rehearing in accordance with these findings. Butler appeals. The Board has filed no brief before this court upon appeal from the trial court's order.

I

Butler asserts that section 7—10 of the Election Code permits a candidate to file more than one set of nominating papers for the office sought by the candidate. Butler maintains that this construction is based on the plain and ordinary language of section 7—10 of the Code; since section 7—10 does not expressly prohibit multiple filings of nominating papers for the same office, Butler urges, this court must interpret section 7—10 to permit such multiple filings.

■■ The role of the court in construing a statute is to give effect to the intent of the legislature; where the statute's terms are unambiguous, they must be given their plain and ordinary meaning. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 362, 489 N.E.2d 1374.) Also, the provision called into question for judicial construction must be interpreted in its overall context, bearing in mind the purpose of the statute and the objectives to be achieved thereby. *Penkava v. Kasbohm* (1987), 117 Ill. 2d 149, 154, 510 N.E.2d 883.

■■ Section 7—10 sets forth certain minimum requirements with respect to the nominating papers a candidate must file in order to appear upon an election ballot. As pertinent here, the section calls for a statement of candidacy, the candidate's statement, and petition sheets containing signatures of persons who request that the candidate's name appear upon the election ballot. Section 7—10 requires, *inter alia*, that these documents must be bound at the edge, to form a comprehensive booklet for submission to the proper election official. Section 7—10 also provides that "[t]he petitions, when filed, shall not be withdrawn or added to." (Ill. Rev. Stat. 1985, ch. 46, par. 7—10; *cf.* Ill. Rev. Stat. 1985, ch. 46, par. 7—12(9) (permitting withdrawal in accordance with stated procedure).) Furthermore, signatures may be properly revoked only under certain specific circumstances.

Butler argues that section 7—10 permits multiple filing of nominating papers because "[s]ection 7—12(9) of the Election Code provides in pertinent part that if petitions for nomination have been filed for the same person with respect to 2 or more offices which are incompatible, then such person must withdraw as a candidate for all but one of such offices within the 5 days following the last day for petition filing." According to Butler, because section 7—12(9) provides for dual filings by the same candidate, "even for incompatible offices, [section 7—10 of] the Election Code also contemplates multiple filings by the same candidate [for the same office]."

Based on this reasoning, Butler suggests that because she could

file two sets of nominating papers for two different offices provided one set was withdrawn by a certain date, she could also file two sets of nominating papers for the same office. Butler also asserts that the Code prohibits supplements to a petition, but does not prohibit the filing of complete multiple sets of nominating papers.

Butler's analysis fails to take into account the language in section 7—10 that nominating petitions for an office "shall not be *** added to." (Ill. Rev. Stat. 1985, ch. 46, par. 7—10.) Although the legislature could have allowed for the addition to a candidate's nominating papers for one office, the legislature chose not to do so. (*Cf.* Ill. Rev. Stat. 1985, ch. 46, par. 7—12(9) (permitting withdrawal of nominating papers).) Also, under Butler's proffered construction of section 7—10, a candidate could file an unlimited number of sets of nominating papers. Such a procedure could easily work an unduly cumbersome administrative burden upon the Board.

Given these considerations, we conclude that section 7—10 does not permit a candidate to file multiple sets of nominating papers for the same office. To so construe the statute would render meaningless the provision's express terms that petitions "shall not be withdrawn or added to." (Ill. Rev. Stat. 1985, ch. 46, par. 7—10.) Butler's suggested interpretation of section 7—10 would also substantially burden the Board in its efforts to determine the validity of signatures appearing in a candidate's nominating papers. See *Richards v. Lavelle* (7th Cir. 1980), 620 F.2d 144, 147.

## II

■ The second question presented herein is whether section 7—10 of the Election Code permits a candidate to file nominating papers containing photocopied sheets of individuals' signatures, provided those photocopies are not otherwise duplicated in the candidate's set of nominating papers. Butler claims that section 7—10 does not explicitly state that nominating petitions be only the "originals" signed by the registered voters eligible to sign the candidate's petition; consequently, the section does not prohibit the inclusion of photocopied petition sheets.

Anthony does not contend that the express or plain language of section 7—10 precludes the filing of photocopied sheets, nor does he maintain that section 7—10, when interpreted in conjunction with other provisions of the Code, precludes the inclusion of photocopied petition sheets. Rather Anthony argues simply that photocopies should always be prohibited as a matter of policy to prevent the possibility of fraud.

On the record in this case, we decline to adopt a *per se* rule invalidating all photocopied petition sheets on no more than the broad, generalized policy consideration offered by Anthony here. In our view, Anthony's argument is insufficient ground to overturn the Board's decision with respect to Butler's nominating papers in the case at bar.

### III

■ Butler claims that section 7—10 of the Code, in light of the decision of the Seventh Circuit Court of Appeals in *Richards v. Lavelle* (7th Cir. 1980), 620 F.2d 144, does not require that all signatures in excess of the maximum number allowed under that section be automatically invalidated and not considered in determining whether the candidate's nominating petition contains the required number of genuine signatures.

In *Richards*, the court held that section 7—10's requirement of removal from the ballot of the name of any candidate whose nominating petition contained more than the maximum number of signatures violated due process. The court observed, "Assuming that limitations [upon the number of signatures contained in the petition sheets] have an administrative justification, the same purpose can be served in a rational electoral system by returning the excess petitions, by refusing to consider any signatures beyond the statutory maximum or by concluding the objection hearing as soon as the minimum required signatures have been validated." 620 F.2d at 148.

Although the court in *Richards* suggested certain alternative methods of handling this situation, it did not specifically require that any or all of those methods be adopted. In its decision with regard to Butler's nominating papers, the Board noted, "Although the candidate's petition exceeded the maximum number of signatures, under *Richards v. Lavelle*, the Board cannot remove the candidate from the ballot, nor can the Board, in the absence of rules governing this issue, per se invalidate signatures filed in excess of the maximum. The Board's practice since *Richards v. Lavelle*, has been to count all signatures, even those in excess of maximum."

We need not and do not reach the question of which of *Richards'* suggested alternatives the Board should or must adopt in this case or in all cases. Rather than infringing on the Board's authority to choose an appropriate sanction by ordering the application of one sanction in this case, we urge that the Board, on remand, determine which of the sanctions suggested in *Richards v. Lavelle*, or another similar sanction, would be most appropriately applied to the facts of this case.

For the reasons stated, we affirm the trial court's decision that

the Election Code does not permit multiple filings of nominating papers of a candidate for one office, such that Butler's second set of nominating papers should be disregarded; we reverse the trial court's decision that the Board's decision to consider photocopied petition sheets was in error under the facts and arguments of this case; we reverse the trial court's decision that the Board must disregard all signatures over the statutory maximum; and we remand the matter to the Board for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.