DEVIN KAEMMERER *et al.*, Petitioners-Appellees, v. THE ST. CLAIR COUNTY ELECTORAL BOARD *et al.*, Respondents (Virgil Kemp, Appellant).

Fifth District   No. 5—02—0504

Opinion filed October 4, 2002.

Robert J. Sprague, of Sprague & Urban, of Belleville, for appellant.

Stephen P. McGlynn, of McGlynn & McGlynn, of Belleville, for appellees.

PRESIDING JUSTICE MAAG delivered the opinion of the court:

This case involves an election contest challenging the nominations of Republican candidates for the offices of sheriff, county clerk, county treasurer, and member of the board of review in St. Clair County, Illinois. The St. Clair County Electoral Board (Electoral Board) heard objections to the candidates' nominating papers, sustained the objections, and determined that the candidates should not be placed on the ballot. The candidates petitioned for judicial review of the Electoral Board's decision. The St. Clair County circuit court found that several findings of the Electoral Board were against the manifest weight of the evidence, and the court reversed the board's decisions and ordered the county clerk to print the names of the nominees on the ballot for the November 2002 general election. The objector appeals.

The St. Clair County Republican Central Committee, through its executive committee, slated individuals to fill vacancies as party nominees for several St. Clair County offices. Devin Kaemmerer was

selected as the Republican nominee for the board of review. Fernando Calvarese was selected as the Republican nominee for sheriff. Neal Connors was selected as the Republican nominee for county treasurer. Larry Massey was selected as the Republican nominee for county clerk. On May 20, 2002, Stephen McGlynn, the Republican Party's county chairman, filed nominating papers with the St. Clair County clerk's office for each nominee. On May 24, 2002, Virgil Kemp (the objector) filed objections to each nominee with the Electoral Board. According to the record, the objector filed the same objections with regard to each nominee's nominating papers.

On May 30, 2002, the Electoral Board convened. The objections to the nomination of the candidate for county clerk, Larry Massey, were the first to be considered by the Electoral Board. Bob Delaney, the St. Clair County clerk, was a statutorily designated member of the Electoral Board. He recused himself from the proceeding because he is the Democratic nominee for the office of county clerk. Charles Suarez, the St. Clair County treasurer, was designated to serve in his place. However, Mr. Suarez is the Democratic nominee for the office of county treasurer. As previously noted, the Republican nominee for the office of county treasurer was subject to the same objections made against the nominee for county clerk. Stephen McGlynn, counsel for the candidates, objected to Mr. Suarez's service on the Electoral Board, on the grounds that the factual circumstances surrounding the nomination of and the objections to each candidate were identical and that Mr. Suarez would, in effect, be deciding the objections to his own opponent, if he were allowed to decide the objections to Mr. Massey's nomination. Mr. McGlynn asked that the chief judge of the St. Clair County circuit court appoint a person to sit in place of Mr. Suarez. The objection was denied and the hearing proceeded.

Elections by their very nature are adversarial proceedings and frequently involve hostility and claims of impropriety by opposing candidates. In most instances, these disputes do not involve illegality or impropriety but merely involve differences of opinion that are amplified by the heat of the debate. Fortunately, the Illinois legislature has provided us with a set of rules, the Illinois Election Code (Code) (10 ILCS 5/1—1 *et seq.* (West 1992)), that in most instances allows the parties to obtain an impartial resolution of these disputes through administrative and judicial mechanisms. We recognize that the Code does not provide for all the contingencies that may arise. In such cases the courts are regularly called upon to clarify statutory deficiencies.

In this case our task is to apply the relevant provisions of the Code as they relate to the disputed issues in this case. We must first consider a contention raised in the nominee's brief that challenges the composition of the Electoral Board.

The nominees claim that the participation of certain Electoral Board members was fundamentally unfair and violated the due process rights of the candidates. In order that we do not misstate their position, we quote from their brief as follows:

"There was no legitimate basis for Suarez and Delaney to serve on that panel. The Electoral Board should have allowed the Chief Judge of the Circuit Court to designate a person to serve who did not have a conflict. Even if the Electoral Board's reason for moving forward with a tainted panel was because it wanted to expedite the resolution of the challenges, speed and efficiency cannot trump the constitutional rights of Massey, Kaemmerer, Calvarese[,] and Connors."

Essentially, the nominees claim that the objections in all four election challenges were the same. Therefore, while a given Electoral Board member recused himself when the objections concerned the Republican opponent of that board member, that Electoral Board member did not recuse himself from considering the same objections against Republican nominees for the other offices at issue. It is on this basis that the nominees contend that the Electoral Board was improperly constituted in violation of their due process rights. In responding to questions from the bench during oral argument, the nominees' counsel, Mr. McGlynn, agreed that decisions of an improperly constituted Electoral Board are null and void.

■ Under certain situations, the rule of necessity requires that persons interested in the controversy also must serve as decision makers. *United States v. Will*, 449 U.S. 200, 66 L. Ed. 2d 392, 101 S. Ct. 471 (1980) (the United States Supreme Court held that it was required, under the rule of necessity, to hear and decide an action filed by the United States district judges in regard to the validity of federal statutes involving benefits for all Article III federal judges). In *Will*, the United State Supreme Court quoted from an 1870 decision of the Pennsylvania Supreme Court, which discussed the rule:

" 'The true rule unquestionably is that wherever it becomes necessary for a judge to sit even where he has an interest—where no provision is made for calling another in, or where no one else can take his place—it is his duty to hear and decide, however disagreeable it may be.' *Philadelphia v. Fox*, 64 Pa. 169, 185 (1870)." *Will*, 449 U.S. at 214, 66 L. Ed. 2d at 405, 101 S. Ct. at 480.

Fortunately, we need not apply the rule of necessity in this case with respect to the Electoral Board. The Code provides a means to substitute a statutorily designated person to replace an "interested" board member. Section 10—9(2) of the Code provides that objections to nominations of candidates for county offices shall be decided by the

county officers electoral board, and that section sets forth the county officers who shall constitute the board. 10 ILCS 5/10—9(2) (West 1992). Also, section 10—9(6) establishes a process for the substitution of a member of the Electoral Board in the event of a conflict. 10 ILCS 5/10—9(6) (West 1992). Section 10—9(6) provides in pertinent part as follows:

> "In the event that any member of the appropriate board is a candidate for the office with relation to which the objector's petition is filed, he shall not be eligible to serve on that board and shall not act as a member of the board and his place shall be filled as follows:
>
> a. In the county officers electoral board by the county treasurer, and if he or she is ineligible to serve, by the sheriff of the county.
>
> * * *
>
> Any vacancies on an electoral board not otherwise filled pursuant to this Section shall be filled by public members appointed by the Chief Judge of the Circuit Court for the county wherein the electoral board hearing is being held upon notification to the Chief Judge of such vacancies. The Chief Judge shall be so notified by a member of the electoral board or the officer or board with whom the objector's petition was filed." 10 ILCS 5/10—9(6) (West 1992).

A literal application of this section would lead to a conclusion that the Electoral Board properly substituted Electoral Board members as specified under the Code. That is, once Mr. Delaney, who is both the Democratic candidate for county clerk and the current county clerk, recused himself from taking part in the consideration of the Republican aspirant's nominating papers for the office of county clerk, he was replaced by Mr. Suarez, the county treasurer. Even though the provisions of section 10—9(6) were literally followed, the conflict that these provisions were enacted to resolve remained, under the circumstances of this case. Thus, Mr. Suarez was required to consider the same objections lodged against his own opponent's nominating papers, albeit with regard to a different candidate.

■ While this section of the Code does not expressly address the factual situation that has arisen in this case, the policy considerations underlying the statute, and the interest in avoiding the appearance of impropriety, dictate that each member of the Electoral Board whose opponent was being challenged should have recused himself from all electoral challenges at issue in this case. It is not our intention to denigrate the Electoral Board members who in good faith recused themselves only when their opponent's petition was being considered. We have reached our conclusion in this case to vindicate the goal of the statute and to ensure the integrity of the process.

The jurisdiction of the circuit court in this case is strictly derivative. Because the Electoral Board was improperly constituted, its decisions must be vacated and the objections must be heard and considered by a properly constituted board. The circuit court should not have reached the merits of the underlying dispute. In this case, both the circuit court's decision to reinstate the Republican nominees and the prior decisions of the Electoral Board to remove them from the ballot must be vacated. Both the nominees and the objector have a due process right to be heard before a properly constituted board. See *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 682 N.E.2d 1133 (1997). This is not a case where we, as an appellate court, can review the record and make an independent determination of the objections. There are material issues of fact that must be decided by the appropriate hearing body. Just as with the circuit court, our jurisdiction is not original; it is limited and derivative. Before this court can act, there must be a decision from a validly constituted board, followed by a review by and an order of the circuit court in regard to that decision.

In light of our resolution of this issue, we will not consider the remaining issues raised in this case, because that would require us to make factual findings and would constitute an advisory opinion. These are fundamental precepts: appellate courts may not exercise original jurisdiction, and no court should issue advisory opinions.

Accordingly, the judgment of the St. Clair County circuit court is vacated. Pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we remand this case to the Electoral Board for a hearing *de novo* before an Electoral Board composed of impartial members, and we direct the chief judge of the St. Clair County circuit court to appoint replacement members to the Electoral Board pursuant to section 10—9(6) of the Code. The chief judge and the Electoral Board shall each act at the earliest practicable date to ensure a timely resolution.

Judgment vacated; cause remanded to the Electoral Board with directions.

HOPKINS and CHAPMAN,[1] JJ., concur.

---

[1]Justice Welch participated in oral argument. Justice Chapman was later substituted on the panel and has read the briefs and listened to the tape of oral argument.